UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JOE HAND PROMOTIONS, INC.

VERSUS

RLPR MANAGEMENT, LLC, ET AL

CIVIL ACTION NO. 12-cv-2106

JUDGE ELIZABETH ERNY FOOTE

MAGISTRATE JUDGE MARK HORNSBY

## MEMORANDUM RULING

Before the Court is a Motion for Default Judgment filed by Plaintiff, Joe Hand Promotions, Inc. ("Joe Hand") against Defendants, Rodney Lawson ("Lawson") and RLPR Management, LLC ("RLPR").[1] For the reasons given below, Plaintiff's Motion For Default Judgment is **GRANTED in part** and **DENIED in part**.

I.    **Factual and Procedural Background**

Joe Hand is the premier distributor of closed circuit pay-per-view boxing and special event programming in the United States.[2] Joe Hand held the exclusive nationwide commercial distribution and broadcast rights to Ultimate Fighting Championship 101: Declaration ("the program"), which was telecast nationwide on August 8, 2009.[3] Joe Hand marketed the sub-licencing of the program to various commercial entities throughout North America, including entities in the State of Louisiana. This sub-licence gave those entities

---

[1]Record Document 12.

[2]Record Document 1, p. 4.

[3]Id. at p. 6.

Page 1 of  13

the right to publicly exhibit the program in their commercial establishments.[4] Prior to the program being broadcast, Joe Hand instituted a nationwide program that retained auditors and law enforcement personnel to identify establishments that unlawfully exhibited the program.[5] On the night of the event, one of Plaintiff's auditors, Jon Dainty, Jr., witnessed the program being broadcast illegally in the establishment doing business as 'N Cahoots Sportsbar Grill, which is owned and operated by Defendants.[6] The Affidavit of Jon Dainty, Jr. states that he witnessed the program being televised on eleven television screens inside the Defendants' establishment.[7] He paid no cover charge to enter the establishment and at various times during his stay, he counted between fifty-three to fifty-seven patrons.[8]

On August 6, 2012, Joe Hand filed the instant complaint in this Court alleging the Defendants violated Section 605 of the Communications Act of 1934, Section 553 of the Cable Communications Policy Act of 1984 (together "the Federal Communications Act"), and the Wiretap Act, 18 U.S.C. §§ 2511 and 2520.[9] On August 28, 2012, both Defendants were personally served with a summons and a copy of the complaint, but they have failed

---

[4] Id.

[5] Id. at pp. 2-3.

[6] Id. at p. 3.

[7] Record Document 12-5, p. 1.

[8] Id. at p. 2.

[9] Record Document 1.

to appear in this matter to date.[10] On March 25, 2013, Plaintiff filed a Motion/Request for Entry of Default, and on March 28, 2013, the Clerk of Court filed an Entry of Default.[11]

On July 23, 2014, Magistrate Judge Hornsby issued a Memorandum Order directing Joe Hand to file a motion for default judgment or be subject to dismissal for failure to prosecute.[12] On August 29, 2014, Joe Hand filed the instant motion for default judgment. On September 3, 2014, a Notice of Motion Setting was issued by the Clerk of Court, which gave the Defendants notice of the motion for default judgment and allowed them twenty-one days to respond.[13] The copy of the Notice of Motion Setting that was sent by the Clerk of Court to the Defendants was returned as undeliverable.[14] The Defendants have never responded.

## II.   Law and Analysis

### A.   Whether Default Judgment is Appropriate

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55(b) states that:

> [a] party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented

---

[10]Record Documents 4 & 5.

[11] Record Documents 6 & 7.

[12]Record Document 11.

[13]Record Document 13.

[14]Record Document 14.

by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative <u>must be served with written notice of the application</u> at least 7 days before the hearing. The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegations by evidence; or (D) investigate any other matter.

Fed. R. Civ. P. 55(b)(2)(emphasis added).

"Nevertheless, Rule 55(b)(2) 'gives the judge wide latitude in determining whether such a hearing will be beneficial.'" <u>Talen's Marine & Fuel, L.L.C. v. Global Sales Agency, Inc.</u>, No. 2:13-cv-920, 2013 WL 6075646, at *2 (W.D. La. 11/18/13)(citations omitted). "While a plaintiff is not entitled to a default judgment as a matter of right, the Court accepts the well-pleaded allegations of fact in the plaintiff's complaint in determining whether default judgment should be entered." <u>Boyd v. Dill</u>, No. 09-0021, 2011 WL 1304725, at *3 (W.D. La. 04/1/11)(<u>citing</u> <u>Nishimatsu Constr. Co. v. Houston Nat'l Bank</u>, 515 F.2d 1200, 1206 (5th Cir. 1975)).

As a preliminary matter, the Court must determine whether Rule 55(b)(2)'s notice requirement has been implicated in the present case. The Fifth Circuit Court of Appeals has found that whether a district court must give notice to a Defendant of a default judgment depends on whether the Defendant has "appeared in the action." Fed. R. Civ. P. 55(b)(2); <u>Rogers v. Hartford Life & Acc. Ins. Co.</u>, 167 F.3d 933, 936 (5th Cir. 1999). "[T]o qualify as an appearance in the action and trigger Rule 55(b)(2)'s notice requirements, the defendant's actions merely must give the plaintiff a clear indication that the defendant intends to pursue a defense and must 'be responsive to the plaintiff's formal court action.'" <u>Rogers</u>, 167 F.3d at 937 (quoting <u>Baez v. S.S. Kresge Co.</u>, 518 F.2d 349, 350 (5th Cir.

1975)). The Fifth Circuit found that "mere acceptance of formal service of process cannot constitute an appearance for purposes of Rule 55(b)(2)" because "if we construed the phrase that broadly, then every defendant would become entitled to notice...." Id. The court stated that "we will not interpret the phrase 'appeared in the action' so broadly as to eviscerate the appearance requirement of Rule 55(b)(2)." Id.

Here, the record indicates that Lawson and RLPR accepted formal service of process on August 28, 2012.[15] Defendants were served with the Plaintiff's complaint and failed to file an answer within the requisite time period. There is nothing else in the record to indicate that either Defendant ever "appeared in the action." As such, it is not necessary for the Court to ensure that the Defendants received notice of the potential default judgment.[16] The Court finds that default judgment is proper.

**B.    Whether There Is Sufficient Basis for Judgment in Pleadings**

Due to their default, Defendants are deemed to have admitted the allegations set forth in the Plaintiff's complaint. Nonetheless, the Court must review the pleadings to determine whether Joe Hand can establish a viable claim for relief. Nishimatsu Constr., 515 F.2d at 1206. Joe Hand alleges that the Defendants unlawfully intercepted and broadcast the program on the premises of 'N Cahoots Sportsbar Grill.[17] Joe Hand divides its complaint into two counts but alleges violations of three federal statutes: (1) 47 U.S.C.

---

[15]Record Documents 4 & 5.

[16]The Court assumes the Defendants did not receive notice of the motion for default judgment because the Notice of Motion Setting was returned to the Clerk of Court as undeliverable. See Record Document 13.

[17]Record Document 1, p. 5.

§ 605(a), which prohibits the interception and publishing of radio communications; (2) 47 U.S.C. § 553(a), which prohibits interception or reception of "any communications service offered over a cable system," and (3) the Wiretap Act, 18 U.S.C. § 2511(1)(a),[18] which prohibits intentional interception of any wire, oral or electronic communication.

Section 553 states that "no person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Section 605 states that "no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). In addition to radio, Section 605 also prohibits the interception of any satellite cable programming, where the satellite programming is encrypted and an agent has been lawfully designated for the purpose of authorizing private viewing by individuals. Id. at § 605(b). In essence, Section 553 prohibits unauthorized interception of cable services and Section 605 prohibits the unauthorized interception of satellite communications. The Fifth Circuit has found that the "legislative history associated with section 553 and ... section 605 reveals that one of Congress' principal objectives was to discourage theft of cable services." Prostar v. Massachi, 239 F.3d 669, 673 (5th Cir. 2001)(citations omitted). The Wiretap Act provides a private cause of action for the intentional interception of electronic communications, including both

---

[18]Although Section 2511 is a criminal statute, Section 2520 creates a private right of action. See DIRECTV, Inc. v. Bennett, 470 F.3d 565, 569 (5th Cir. 2006).

satellite and cable transmissions. See DIRECTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008).

In order to prevail under any of the above statutes, a Plaintiff must show "(1) that the Event was shown in Defendant's Establishment, (2) that the Event was shown without authorization by Plaintiff, and (3) that Plaintiff was the exclusive licencee." J & J Sports Prods., Inc. v. El 33, LLC, No. EP-11-CV-519-KC, 2013 WL 164521, at *3 (W.D. Tex. 01/14/13); See also DIRECTV, Inc. v. Bates, 393 F.Supp.2d 147, 149 (N.D.N.Y. 2005). The pleadings and evidence submitted by the Plaintiff show that (1) the program was broadcast in 'N Cahoots,[19] (2) it was shown without the Plaintiff's authorization,[20] and (3) Joe Hand was the exclusive licensee of the program.[21] Therefore, Joe Hand has established a viable claim for relief under the Federal Communications Act and the Wiretap Act.

## C.    Damages

"A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages." Ins. Co. of the W. v. H&G Contractors, Inc., No. 10-390, 2011 WL 4738197, at *4 (S.D. Tex. 10/05/11)(citing Jackson v. FIE Corp., 302 F.3d 515, 524-25 (5th Cir. 2002)). Damages must be proven by a hearing or a demonstration of detailed affidavits establishing the necessary facts. Id. If the amount of damages can be determined with mathematical calculations by reference to the

---

[19]Record Document 12-5, p. 1.

[20]Record Document 12-8, p. 3.

[21]Id. at p. 2.

pleadings and supporting documents, a hearing is unnecessary. Id. The Court finds in the instant case that the evidence provided by Joe Hand is sufficient to determine damages, and a hearing is not necessary.

As described above, Section 605 applies to the theft of cable services over satellite connection, Section 553 applies to the theft of cable services over a cable system, and the Wiretap Act prohibits the intentional interception of any wire, oral or electronic communication. There is a divide amongst circuit courts as to whether Section 605 applies to the theft of cable services carried over a cable, and the Fifth Circuit has not decided the issue. Prostar, 239 F.3d at 673, n.23 (comparing United States v. Norris, 88 F.3d 462 (7th Cir. 1996), wherein the court found that Section 605 does not apply to the theft of cable services over a coaxial cable but does apply to interception of cable transmissions as they travel through the air, and Cablevision v. Sykes, 75 F.3d 123 (2d Cir. 1996), wherein the court found that Section 605 applies to theft of cable service carried over coaxial cable).

Citing the Defendants' lack of response to Plaintiff's discovery requests, Plaintiff cannot confirm how the Defendants intercepted and broadcast the program on the eleven televisions in the establishment.[22] However, as noted by Joe Hand in its complaint,[23] courts have found that Plaintiffs cannot receive damages under both Section 553 and Section 605 because they are not cumulative. J & J Sports Prod., Inc. v. Papania, No. 09-1754, 2010 WL 1191807, at * 2 (W.D. La. 03/26/10)(wherein the court noted that "Plaintiff elects to proceed and receive damages under § 605. Plaintiff may only recover under one section.

---

[22]Record Document 12-2, p. 6-7.

[23]Record Document 1, p. 10.

In other words, §§ 553 and 605 are not cumulative."). Additionally, courts have found that if damages are awarded under Section 553 or Section 605, then damages awarded under the Wiretap Act would be gratuitous. See Rawlins, 523 F.3d at 329.

As such, in the present case, Joe Hand cannot collect damages under both Sections 553 and 605, and if he collects damages under one of the Federal Communications Act sections, then collecting under the Wiretap Act would be gratuitous. The Court finds that the purposes of the Federal Communications Act and the Wiretap Act would be served in this case by an award of damages under Section 605 and that the issuance of damages under both Section 605 and the Wiretap Act, which are premised on the same conduct, would have no useful purpose.  Because this is a motion for default judgment and because the Defendants have failed to provide arguments to the contrary, the Court will proceed with damages under Section 605.

A party aggrieved by a violation of Section 605 may elect to receive either actual damages or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Statutory damages for each violation of the section must be awarded in an amount no less than $1,000 and no more than $10,000, as the Court finds just. Id. at § 605(e)(3)(C)(ii). An aggrieved party who prevails shall receive full costs, including reasonable attorney's fees. Id. at § 605(e)(3)(B)(iii).  Joe Hand seeks statutory damages, an enhanced damages award, and full costs, including attorney's fees.

### i.    Statutory Damages

Joe Hand seeks the statutory damages maximum of $10,000 against the Defendants. Joe Hand argues that it would be impossible to calculate the full extent of lost

profits and additional damages suffered because of the Defendants' actions.[24] To support

its claim for damages, Joe Hand has attached an affidavit from its President, Joe Hand,

Jr., explaining the threat that this sort of piracy poses to itself and the cable industry,

including loss of profits totaling millions of dollars.[25]

In determining statutory damages under this subsection, courts have adopted

several different approaches. Some courts have imposed a flat sum for damages, while

others calculate a sum based upon the number of patrons in the establishment at the time

of the violation. Finally, some courts impose the cost of appropriate licensing fees

proportional to the size of the business had the business legally aired the program. Joe

Hand Promotions, Inc. v. Bonvillain, No. 13-4912, 2013 WL 5935208, at *2 (E.D. La.

11/05/13). The Court was not provided with either the cost of the sub-licensing fee or with

evidence as to the cost each patron would have had to pay to purchase the event for

private viewing at a residence. However, a sampling of cases similar to the one at bar

indicates that, generally, the license fee for an establishment is around $1,100. See Joe

Hand Promotions, Inc. v. Alima, No. 13-CV-0889, 2014 WL 1632158, at *4 (N.D. Tex.

04/22/14); Bonvillain, 2013 WL 5935208 at *2; Joe Hand Promotions, Inc. v. Plummer, No.

14-00001, 2014 WL 3749148, at *2 (N.D. Miss. 07/29/14).

The Plaintiff is correct in its assertion that one of the purposes of a statutory award

is to deter this type of conduct.[26] See Plummer, 2014 WL 3749148 at *2. Courts have

---

[24]Record Document 12-2, p. 4.

[25]Record Document 12-8.

[26]Id.

Page 10 of  13

found that simply imposing minimal statutory damages or only requiring a Defendant to pay the licensing fee he should have previously paid does not motivate a Defendant to refrain from unlawful conduct. See id.; See also Alima, 2014 WL 1632158 at *4. Courts have awarded various amounts of statutory damages for similar conduct. See Plummer, 2014 WL 3749148 at *2 (awarding base statutory damages of $3,000); Alima, 2014 WL 1632158 at *4 (awarding base statutory damages of $5,000); Joe Hand Promotions, Inc. v. Armijo, No. 13-cv-321, 2014 WL 1761709, at *3 (W.D. Tex. 2014)(awarding base statutory damages of $3,600); Bonvillion, 2013 WL 5935208 at *2 (awarding base statutory damages of $1,925). The conduct of the Defendants in this case has harmed Joe Hand's business and decreased its profits. Considering the need to deter future unlawful conduct, the Court awards Joe Hand statutory damages in the amount of $2,400, which it finds to be just under the circumstances and comparable to awards in similar cases.

### ii.    Additional Damages

Joe Hand also seeks enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii), which allows for additional damages when "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." Here, the complaint and evidence support the application of this subsection. Although Section 605 allows for additional damages in an amount not greater than $100,000 for willful violations, courts have varied their approaches to determine the proper amount to award in cases similar to the one at bar. 47 U.S.C. § 605(e)(3)(C)(ii); See J&J Sports Prod., Inc. v. Beck, No. 13-57, 2013 WL 5592333, at *3 (S.D. Tex. 10/09/13)(awarding damages in the amount of three times the base because Defendant did not charge a cover charge, only 30 patrons viewed

Page 11 of  13

the event, and Defendant was not a repeat offender); <u>Bonvillain</u>, 2013 WL 5935208, at *3 (awarding damages in the amount of twice the statutory damages because the Defendants did not charge a cover charge, did not charge a premium for the food and drink sold during the broadcast, and Defendant was not a repeat offender); <u>Alima</u>, 2014 WL 1632158 at *5 (awarding damages in the amount of four times the base statutory damages because Defendant charged a $5 cover charge and showed the event on nine screens).

The evidence on the record shows that Defendants broadcast the program on eleven screens and had between fifty-three to fifty-seven people in the establishment during the broadcast.[27] There is no evidence that the Defendants charged a cover charge for entry into the establishment, charged a premium for food or drinks, advertised their broadcast of the program, or are repeat offenders. Considering the evidence in the record, the willful nature of the violation at issue, and the need to deter violations of the law, the Court finds that enhanced damages are warranted in the amount of $4,800, which reflects twice the statutory damages and which is four times the estimated license fee for the establishment.

### iii.    Attorney's Fees and Costs

Joe Hand seeks to recover attorney's fees and costs under Section 605.[28] However, Joe Hand has not provided the Court with any evidence setting forth any particular amount owed or details as to the basis of any amount owed. The Court reserves Joe Hand's right to petition for costs and attorney's fees. Joe Hand is ordered to submit sufficient evidence

---

[27]Record Document 12-5.

[28]Record Document 1, pp. 9-10.

demonstrating its entitlement to costs and fees, as well as the amounts thereof, by **MARCH 2, 2015.** If Joe Hand fails to support its claim by that date, the request for costs and attorney's fees will be denied and the Clerk's Office will be directed to close this case.

## III.    Conclusion

For the forgoing reasons, **IT IS ORDERED** that Plaintiff's Motion For Default Judgement is **GRANTED** as to Plaintiff's 47 U.S.C. § 605 claim. **IT IS FURTHER ORDERED** that the Plaintiff is hereby awarded statutory damages under 47 U.S.C. § 605(e)(3)(C)(i) in the amount of $2,400 and enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii) in the amount of $4,800. **IT IS FURTHER ORDERED** that Plaintiff has until **MARCH 2, 2015** to submit sufficient evidence demonstrating its entitlement to costs and fees, as well as the amounts thereof, under 47 U.S.C. § 605(e)(3)(B)(iii). **IT IS FURTHER ORDERED** that Plaintiff's claims under 47 U.S.C. § 553 and 18 U.S.C. §§ 2511 and 2520 are **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 6 day of 2015.

Elizabeth Erny Foote
United States District Judge